Good morning, I'm Justin Isaac on behalf of Appellant Jibenga Ogundole. We are here on a consolidated appeal with a table full of fellow counselors. I have agreed to take the points on appeal that seem to apply to all parties, and then I'll be followed by my co-counselor who will address any residual issues or issues that apply specifically to them. Your Honor, the first issue at hand, this trial was brought by the government in allegations that the appellants had engaged in fraud to convince people on the Internet or use their accounts to defraud people of money, engaging in fake dating relationships. As part of the government's case, they utilized charts under Rule 1006. And these charts are specifically damaging to a case because they are substantive evidence as opposed to the other types of charts that are really demonstrative, used by witnesses to sort of explain their opinions. These are summary charts that the FBI agents made up? They are. And what's particularly... And we review this contention for abuse of discretion. Well, during the trial, because of the nature of the testimony... So the charts were actually introduced by one agent, Rutledge. However, the main case agent was Custer. And through the testimony in court, the case agent is the one who actually told that agent what to put in the charts. And we actually, based on the way the charts were utilized and the contents of them, we raised also a constitutional violation that it ended up being a fair trial issue. In these charts, they were curated by the case agent to get their theory of the case in front of the jury, which is not the purpose of the chart. The purpose of the charts in the rule is to summarize voluminous documents. Your argument is that government can't use these charts as a factual way to get in, otherwise, inoffensive weapons. That's correct. But if we go there, at least maybe I'm anxious to really get to the next question. Why is it not harmless in this case? Even if you say this evidence is there, that's not... There's other evidence in this case here that goes beyond these charts. So why is it not harmless in this case? Well, it's not harmless in this case because, as you read the record, you can see that the charts were a part of almost every portion of this trial. And they were neatly organized. They're very pretty, very large. And the reason it's not harmless, Your Honor, is because if you look at the actual lost amounts, one example is the cash. I'm going to the fact that the government presented a methodology at trial that could be used to determine that these transactions were fraudulent, and you didn't need the charts to do it. So why, if you can do it through this methodology, why do you need the charts? And by methodology, Your Honor, you need, for example, the witnesses that testify about what happened to them. These things are used and commonly used and contemplated for complex cases to assist jurors in understanding the case. Right? Well, that is why the government... That's the idea of them. And that's the idea of them. And the judge is a gatekeeper under an abuse of discretion standard for making sure that the charts are fair and reflect the evidence. Well, Your Honor, it summarizes the evidence. In fact, you've got two agents working on the thing to put them together. I don't understand that part that they might have a heck dozen working together to put the charts together, but only put one of them on the witness end at a time. That's the way it works. Well, the thing is... The FBI works together all the time. You've got a lot of agents working together. I'm okay with this. Me, I'm going to want to work together as possible. But our clients are still entitled to a fair trial. You absolutely are. And the summary charts are entirely permissible. I mean, the courts want jurors to be able to understand the evidence. That assists you in getting a fair trial. It assists the government in getting a fair trial. Both sides are entitled to a fair trial. The reason this is so damaging, Your Honor, is because it appeared from, and you can review the transcript to see if I'm wrong, but the government had made a calculated decision to call X number of victims. And they did that. But at least 12 other victims are in these records with no explanation of why they're in there, what the purpose is. And some of it was not even provided in discovery. And they didn't intend to bring these victims into court. And the problem with that is when that... I thought the chart was representational about bank account transactions. In other words, it wasn't the testimony as much as it was showing deposits and withdrawals from bank accounts. And they've limited it to $1,000 or more on the charts so they didn't have the bank accounts showing $6.13, which was not part of the theory of the case. It was these large transactions. But wasn't the underlying evidence available to you, the bank account statements and the deposit slips and all that stuff? The underlying, the accuracy of the literal numbers in the bank statements is not an issue. I understand, but was it available to, is my question. The bank statements, yes. All the data on the charts came from the bank statements, right? That's correct. They were accurate statements insofar as they were included on the charts of what was in the bank statements. You had access to the bank statements, and if you wanted some transactions that were smaller than $1,000, you could have said, I want to show all the transactions, and you could have done that, right? In fact, Your Honor, as far as I could, I introduced some of the substantive bank statements as the trial accounts. I said, look here, there's a toy that was purchased here, there's a car that was purchased here, there's all these things. That's fair enough, and that's a good approach on your part. But I don't see how that advances the ball that much for you because the deposits were blended with other transactions. In other words, these deposits into the accounts, the theory of the government's case, were these large transactions. I mean, hundreds of thousands of dollars going back and forth in all these accounts is very complex in the way they were transferred, and the chart was intended to simplify for both sides the transactions. But you're introducing smaller transactions, I think, was a totally good way to do it. As a matter of fact, you could have actually put up a chart if you wished which showed all the transactions as opposed to just the $1,000 transactions. The problem, Your Honor, is just factually, the number amount for the dollars was not applied to each. They didn't apply that uniformly. There were different regimens applied to different types of transactions. So, for example, the agent said that for the wires, for the deposits, that he would apply it one way. But then when he testified, he said, I put all of the cash transactions in all of the accounts in here. And we heard generally no proof about where these cash transactions came in. So, if you imagine a jury standard... That's part of a cross-examination, which you were very good at. Well, I would agree with you, Your Honor. Not quite good enough. Not quite good enough. So the fairness issue comes down to... But that question that Judge King just asked is fundamental here. If the trial judge says, and you said there's not a specific amount, but he says around dollar deposits, sometimes out-of-state deposits, typically cash deposits, often structural deposits, of which he said was supplemented by wires from victims on this, and you had a chance then to examine these witnesses, and you did it about this particular... I call it methodology. You want to know, but that's what I'm talking about is the basis here. And yet, you don't need a judge to do that. I mean, you did that. And if you wanted to, you could have called those witnesses, but I'm sure you didn't want to call those witnesses that were not at the trial. Well, Your Honor, a lot of those witnesses, from my perspective, the government called the best live witnesses, so to speak, and the other people were not called. The problem is, let's say, for example, as the government suggests, when Agent Custer gets up there, I question him. I'm questioning him about victims that are not there to testify at trial, so whatever answer he gives, I'm stuck with. And a lot of information was not provided to us. We didn't have all the specific investigations into the case. No, no, stick with the charts. I mean, we're not talking about, we're talking about, did you have all the data supporting the charts? No. Wasn't the charts supporting the documents? This is important, Your Honor, because the agent admitted that these were put in here because the agent, through evidence, maybe not enough to put a witness on a trial, but he believes were fraudulent. I had the raw data. I'm talking about the charts, the raw data. You can question whether any transaction was fraudulent or not, or whether the person was there or not. The persons didn't all have to come in. The charts were representational of bank accounts and transactions, and you're saying the transactions they selected were not supported by testimony by the witnesses, but that doesn't, that's not a, the critique on the chart is they didn't include all the data you wanted, but the underlying data is there, and you could have put it in just as well as they can. Under the rule, you had to be provided the documents in advance to look at them to be sure they're accurate. Your Honor, the rule allows for summaries of voluminous evidence. Yeah. And it's not a summary of voluminous, Your Honor, respectfully, it's not a summary of voluminous evidence. Were you giving all the evidence that supported the charts? Yeah, I said that repeatedly at the top, but it was not a summary of the evidence. They were summaries. I mean, you could contest the charts and say they weren't summaries, that they made this stuff up, the FBI did. But they're summaries. The rule contemplates summaries. There's an opinion of the agent. To assist the jury. They're not really there to assist you and the prosecutor. Everybody's trying to help the jury out to understand this case that lasted for days. I gave the example of, and I think in my brief, if you summarize, for example, let's find out in this account how much money they were paid by this person over a period of 10 years. That is a clean cut, something pulled from the data. This is a methodology, a curated opinion of the agent, and it wasn't appropriate because the agent that talked about it was not aware of where he was in the case. He didn't do the investigation. So he's not even appropriate under a lay expert or a lay opinion, excuse me, a lay opinion to give that kind of opinion testimony. And Judge Grimm, when he made his ruling, it's kind of a summary. So you're attacking his qualifications now. Is there a charge you're attacking the qualifications of the witness? Well, his Honor justified partially to have a charge. Something is that even if it's an opinion, it's admissible as a lay opinion, but it's not appropriate because he's not the one that came up with the methodology. He didn't have the information to rationally basis on his perception. He was just told what to do. And so I think I've gone past my time. How many points? You said you had three or four points, and this charge was just the first one. I know. What was your next biggest complaint about? Well, I would say the next biggest complaint that's helpful that applies to everyone was two of them. The whole rule of completeness issue, this methodology of the government splitting up statements and including the inculpatory but leaving out the exculpatory, the United States Attorney does it time and time again in our district, and that's evident in Judge Grimm's sort of titulation. I included that opinion in the Bailey case. The so-called exculpatory evidence was hearsay. Correct. Is that correct? Yes. But as the rule of completeness can sort of fix fairness issues with regard to that issue of hearsay, it's not fair if it is misleading to the jury, which it is. For an agent to go up and say, yes, Mr. Gundelow made this statement, is not true. They just say the parts that they want because the rules justify it. It misleads the jury to say this is what he said because it's not true. Have we ruled on that, though, as to whether the rule of completeness is an independent ground for admissibility? I'm sorry, Your Honor. Have we not ruled on that in Fourth Circuit? The Fourth Circuit case, yes. But as Judge Grimm so eloquently put out – What Fourth Circuit case was that, Hassan? Yes. Was that wrong? Well, what Judge Grimm – Was the Hassan case wrong? That's key. I believe it's key, but – What's the answer? The answer is the common law rule of completeness with regard to oral statements is still alive. It has never been superseded. Is that case wrong? No, but we're talking about oral statements. But I want to know if that case is wrong. Not for written statements, but we're talking about oral, Your Honor. The common law with regard to oral statements on the rule of completeness is still alive. There's been no case, Hassan or otherwise, that's overruled the common law rule of completeness. How does the common law survive? If you have a rule on it. And I have to get the case thing, but specifically the whole rule, it was not specifically addressed. In other words, why would we look to the common law if the federal rules of evidence speak to it? It doesn't because it doesn't address oral statements. There may be a reason for that. The completeness only applies to written statements. Common law, as I understand the case law, is only extinguished if it's specifically extinguished by a rule. There are common law principles that still survive in the common law rule of completeness. And the reason it's so important – Has anybody ever said that? Judge Grim did in his Bailey opinion, although I'm not citing it as precedent. Do we have any precedent that says anything like what you're saying right now? No, and like I pointed out in my reply brief, we do not have to overrule that case because we're talking about a different basis to introduce it. The whole point of the common law rule of completeness – And that case you're referring to is Hassan? Yeah, Hassan does not – Well, we can't overrule Hassan anyway. I understand – That was a panel. I understand, Your Honor. But what I'm telling the court is that the oral exception to the common law, that portion of it has not been overruled. And the whole basis of the rule of completeness, to be fair, make a fair trial. Have the jury actually hear the actual statement. Well, if you get to the substance of the rule in here also, you have the declarant. He's not speaking against his interest. He is basically saying, I'm the one involved, not my wife and not her brother. And that's what you wanted in there. That's correct. You wanted him to declare the wife and the brother not involved. And, of course, he has every interest to say that in his own interest, in his love of his wife and his brother. There's a lot of reasons when you get into it. And, as you know, Judge Grimm is one of the leading experts on evidence. And I'm sure he gave all this complete consideration. Well, and I would encourage your honors to read the rationale of the Bailey decision, which occurred after ours and where he changes his point of view. I understand. And because he is an expert, I thought it was helpful to put that in there. Well, that's fair enough. That's fair enough. So I've gone well into my time. The other issue dealt with the aiding and abetting to the ex-identity theft applying Rosamond because of the advance notice. Although it has not been applied to identity theft, the logic still applies. We're not trying to change the entire case law in aiding and abetting, your honors. He still needs to agree to be part of the plan, even though he doesn't do each particular part. And the whole point of Rosamond in a 924C scenario is that he knew before about the firearm. And the idea, we have a separate charge. You can bring all this up on your rebuttal. I mean, we've given you already quite a bit, your honors. You briefed all this stuff extensively. Yes, your honors. And we're going to see you again today. Yes, you are. Good. All right. Mr. Owanage? Yes. Good morning, Judge Keeley and good morning, Judge Wayne. In reference to Babatunde Popola, who I represent, the issue that I'm going to be addressing, your honors, is specifically as it deals with the 1028 capital A. Specifically, judges, as I understand it from the facts, an individual, individual Z, who happens to be the sister of Mr. Popola, had, with consent, given account information to the brother, the defendant, in this case, Babatunde Popola. He subsequently used that account information. Then, in this case, he was charged with 1028 capital A. As I try to distinguish in my reply brief, the case involving Babatunde Popola and the facts of this case as it relates to individual Z and their consent, is more analogous to the case of United States v. Spares on the Seventh Circuit. In that case, which is an unbiased decision, they held that Section 1028A uses, when somebody uses another person's identification, and that person refers to who gives consent, in other words, the consent that we have in this case from the sister, that that use with the means of identification becomes the issue. In other words, the way they distinguish it from Otuya, which this court has decided, in Otuya, this court emphatically says, if one does have lawful authority to consent, if the individuals that are involved in Otuya's case are co-conspirators, as you all know well away in the Otuya case, it's the Otuya recruited people who were either students or faculty. So what was the error here you're saying the district court made? Are you talking about gaining access to identification as being an error? One who gains access to identification and uses it unlawfully, that's clearly criminal conduct. My point is, and then the error here is that that should be a 1028A subsection 7 violation, which is identity fraud and not identity theft. It's not covered under the aggravated identity theft statute? Are you saying it's not covered under the aggravated identity theft statute? That's my point, Judge. It seems to be clearly so. That's exactly what that statute is for. Someone who gains access to identification and then uses it unlawfully. What takes it from that statute? Judge, if you look at the way 1028A reads specifically, it says provides that anyone who, in connection with a list of other crimes, knowingly transfers, possesses or uses, without lawful authority, a means of identification of another person. In this first case, another person with consent, with the use of the means of identification. But you can't give permission to act unlawfully. That's what this court found in Otuya, that you cannot give consent to act unlawfully. However, Otuya recruited students who provided information, and then that information was used by the students for the purposes of getting documents, getting cashier's checks, then making deposits into those accounts. So that is the unlawful act because it is theft in the sense that the checks were gotten, the deposits were made into accounts of the supposed quote-unquote people that gave consent, but they couldn't give consent because as this court found in Otuya, they were actually co-conspirators. What distinguishes it from the Babatunde case is that the sister gave him consent and gave her account information to the brother. The acquisition of that information is not for a fraudulent purpose. What was done with it and then the victim involved was not for the purposes of the theft of that information as opposed to the fraud. What we have is did the sister give consent knowing that the account would be used for fraud? The sister gave consent because she thought it was a car transaction. She believed it was a car transaction. But then isn't that a form of theft if you defraud somebody to use the account? In other words, was the sister defrauded in giving her consent? Could that be theft? Based on that testimony, Judge, I don't believe that. She testified that she wasn't deceived. If my memory says me right, I wasn't trial counsel, but if my memory of the trial says me right, but if she was told, we're going to use your account to commit fraud and launder money, did she admit she gave consent for that purpose? I do not believe that she would have given consent for it to be used fraudulently. But then, in that case, it would be fraud as opposed to theft. Your point's well taken as to the fraud on others with the identity. That's a better account. But it can be a theft. The identification can be stolen when you misrepresent the purpose for which you're getting consent from the sister. I think that's the theory, isn't it, in this case? Judge Amaya, it's a little different with the facts of the Otuya case. In other words, the sister gives consent for the use of the account. Right. And then the deposit is to be made into the account. Right. The 1028 capital A, in fashioning or in looking at the violation itself, it talks about the theft of the identifying information. I thought it was a theft of the identification. A theft of the identification. And the identification is stolen by his misrepresenting the purpose for which he's going to use it. If you borrow a gun from me to go hunting, and I lend you the gun, and all along you really were buying the gun, you borrowed the gun to go next door and shoot the guy, it seems to me there's a fraud you've committed in borrowing my gun, and the argument is that fraud amounted to a theft. Of course, there's a borrowing. It's temporary, but that's something else. Hypothetical. Hypothetical. That's where I would say that the Ombudsman's decision instead classifies it as a fraud, as opposed to a theft. In other words, if I tell you I'm going to use this with the example that you gave, if I'm going to use this but I don't use it, it becomes fraudulent as opposed to theft. But if you're acquiring the identification, the use of the identification was fraudulent here. But acquiring the identification, one way is, of course, to just steal it on the Internet or steal it from some cash register or something like this. But in this case, he's dealing with somebody he knows, a sister. But he tells his sister he wants to use the account, and she's under the impression it's going to be used legitimately for car transactions. In fact, all along he intended to use it for laundering money. Isn't that a form of theft from her? I will submit that it's- Is that the government's theory or not? That technically was the government's theory. But then based on the testimony of the sister and then the testimony of Mr. Popola, it puts this case more in 1028, not the capital A, but the subsection 7, as opposed to the aggravated identity fraud. So your argument basically is he was charged under the wrong section. That's my argument. He was charged under the wrong section because based on the elements that it cannot be- because as the example that they did in this first case, specifically if a tax preparer provides information based on a false tax return that's submitted to IRS, it becomes identity fraud because that information was obtained and it was fraudulently used. However, that's not what we have here in terms of the information, how it got to Mr. Popola and how it was used. So based on those reasons, I will ask the court to reverse the 1028 capital A conviction. And I will submit on the record all the arguments that my time seems to be up. Well, I've given everybody a little more time here. We're going to be trying to get back on schedule. All right. Mr. Selig? Good morning. Richard Seligman on behalf of Mogi Sola Popola. Who do you represent? Mogi Sola Popola. Right, okay, right. Mogi Sola Popola has one issue that's unrelated that none of the other defendants have, and that's the suppression of the statement she made by putting in her passcode into her iPhone. And it's in our position that that should be suppressed. Do I understand the facts correctly that the officer, the law enforcement officer, told her to put in her code to open up the phone, and she put in the code but did not reveal the code to him? Is that the facts in this case? That's correct. Okay. And your argument is that putting in the code is testimonial? Correct. And you represent her? Yes, and I represented her at trial. Yes. So she got the most lenient sentence, right? She's out. That's why it's taking five minutes. So you say that, what, violates her Miranda rights? Yes, violates her Miranda rights. And I think the strongest argument that the government has. She was under arrest. He asked her to put her password, open the phone up. What did he say? Well, look at the circumstances where she was under arrest. The police came in. What did he ask her to do? What did he say to her? It was a female FBI agent, and she asked her, can you please enter your passcode into the phone? That's the question. Okay. And she? And she complied. She complied. She didn't answer. She just did it. Correct. Okay. And then handed her the phone. Correct. And then they gathered up a lot of evidence off the phone. And they used that evidence. And the evidence implicated her, and they used it against some of the other defendants too, right? Correct. Okay. Now, they're not complaining about this. You're the only one complaining about it. Right? Well, I'm the only one who has standing, I think, to complain about it. Well, that might be right. But they don't say they have standing. They just don't get into it. Correct. So I think, since I don't have a lot of time, I'll get to the point. I think the government's strongest argument against this, and it has basically been in position all along, and I've addressed all these in our briefs, is the assertion that Patain basically rules that if it's fruits of Miranda and it's physical evidence, they're fruits of Miranda. Well, it has to be an interrogation and it has to be testimonial. And the argument the government makes is doing this is she didn't say anything, she didn't reveal the code. She basically complied by putting the code, it's like opening the front door or giving the key. Well, but the case law in the Supreme Court suggests that using a combination to the safe, which is more akin to this. Yeah, but they're revealing it. Yeah, well, or turning the combination to the safe, using the contents of their mind to, which is essentially testimony. I think they distinguish between that and using a key. Opening the door with a key. In other words, opening the door with a key is more like what your client did in this case. Well, that's the government's position. Our position is that the judge agreed with the government. I mean, he said that too, didn't he? He may have. But the Supreme Court, when it stressed this issue and looked at combination locks versus a key, has said that combination locks are testimonial. And in this case, our position is this is more like a combination lock that the Supreme Court has dealt with. So testimony. And the government says, well, even if it is testimonial, it's not in anyway because the team's physical evidence that we're getting in. That's got to be correct, isn't it? I mean, when you look at it, pass code, nowhere during the trial did they introduce the pass code. Pass code shows ownership. But the case law is pretty clear. The non-testimonial proofs of the phone show the ownership, which is a voluntary type situation there. So when you get to the non-testimony evidence, so what? Okay. It was a violation to get the code. You exclude that. It wasn't even brought up for trial. So now you're dealing and the case law is right on it. What do we do with it? We can't overrule it. Well, I think you can distinguish it. That's going to be hard. Well, I'll try. Let me give you the basis on which I would suggest. Maybe you can get the Supreme Court to change it. Well, depending on how this court rules, maybe we'll be there. I've been in this situation with this court before. Okay. I think we understand the point. Well, I just wanted to say, as to pertain, I just wanted to say why it's different, if I could just have a moment. All right. You get your moment. And that is that the senators talked and pertained about the not being – the same way pertain was decided, so was silver, Missouri versus silver. And in that case, the Miranda issue was dealt with based on whether it was good faith or bad faith. And based on the facts of this case, I would submit that there was bad faith, which was not dealt with by the court in this matter, and that needed to be dealt with. Did you raise bad faith? I argued it in the sense that the agent wasn't credible in terms of – a series of questions came up. First, she agreed that she knew, the agent knew, that the defendant could refuse to put the code past her. And she knew – and she hadn't read her Miranda rights. She had already asked her once where her phone was. And then when they found the phone, they proceeded to do this. And it was clear that she used this technique to avoid – to try to avoid Miranda's prescriptions. The very issue that's being raised here. And from the circumstances, that was clear from her admissions during the testimony. That is the agent Winkes' statement. All right. I think we're going to have to cut it out there. So I'd ask the court to look at the facts that have been set forth in the brief that go to that issue when considering that. And I'd also want to emphasize that our facts are different with regard to the pre-instruction on willful blindness, which is – I don't have time to go into it at the moment, but that's one of the other issues that applies to multiple parties. And that's very fact-specific. And the facts, again, here, I would argue there are very few facts that show there was any specific action taken by Ms. Popola who had the least evidence against her. To show that she was trying to avoid knowing the truth. This was her husband who had asked to use her bank account. Is she released from prison now? She's on supervised release. Supervised release, yeah. Okay. All right. Thank you, Mr. Southerland. Thank you. Mr. Rutter. Good morning. This is the court. I'm Jerry. We're representing Mr. O'Leary. Your Honor, if I could jump to one of the three issues that was raised. Who did you say you represent? Mr. O'Leary, Your Honor. Okay. Thank you. If I could address the sentencing question that was raised in our brief. Your Honor, the main problem that we see with the sentencing hearing is the determination of the amount of loss. What had happened during the trial itself is that two special agents testified, Agent Rutledge and Agent Custer, concerning these charts, which you've already heard Brother Counsel speak of. And the transcripts do not indicate in any way, shape, or form what the numbers on the charts relevant to Mr. O'Leary, there's four of them, for the years 2011 through 2014, represent. Other than they represent almost the entirety of all deposits made into his separate accounts, about four separate bank accounts. And you've already heard the argument concerning the admissibility of those charts. I'm going to join in that, Brother. That's not where I'm going in terms of the question of the sentencing hearing. So all we have at the trial is the fact that these represent the vast majority of deposits made into his account. When you go now to the sentencing hearing, there is no discussion at all as to what the numbers represent, other than the fact that they represent the total deposits minus, I think, Judge Miller pointed out, deposits less than $1,000, I think. So the vast majority of the funds were accounted for. But there was no discussion at all as to what those numbers represented. And, rather, what happened was Judge Grimm simply accepted. He simply said, I'd give the same sentence regardless. I'm sorry, Your Honor? He simply said, I'd give the same sentence regardless. Well, Judge Wynn, that could be the case, but I think that you can't skip from having clearly a procedurally incorrect offense level to the fact that, well, maybe I would give the same sentence regardless of what the loss amount was. That particular subsection is what really drives the amount of the offense level, 16-level increase. And, in this case, I think this Court should find that there was no factual basis at all. Forget the fact that we know it's a lesser standard by a preponderance of the evidence. There was no discussion about what the numbers represented. Now, it gets worse than this. In 2011, 13, and 14. Well, that's not quite true. I mean, basically, the loss is the amount of money that the victims paid into these accounts, right? Well, partly so, Your Honor, yes. Partly so. Well, these victims came in and testified, the big sum. Judge King, what you see when you look at the 2012 bank account of Mr. Oleone is that there were 15 names that were actually placed on bank statements. He didn't know what those names represented, and that's why he reached out to Mr. Ogundile and Mr. Haruna and the bank itself, which, by the way, Morris and to our Wolf of Blindness, a discussion. He did not know why those names appeared. But if you add up the names of those people, three of the 15 testified, their loss amounted to $70,000. How about all the others? If you add those up, Judge, it's another $120,000. So it's $190,000? Yes. What did the court find as the loss? $1.64 million. Because all the judge did, Your Honor, is he said, well, $1.64 million was what was deposited in these accounts. Well, wasn't there a conspiracy account? I mean, isn't that a loss that he's ---- Your Honor, there's a conspiracy account, but you have to be able to tie the deposits made into those accounts. He took it dollar for dollar. There's no way one can escape the fact that, well, maybe he was referring to some of the money that went into Ogundile's account or somebody else's account. He took the exact number from Mr. Oleone's account, and he therefore made a factual finding that every dollar was a part of a fraud scheme, and no one testified to that. No one. And so our argument is that this court should find that the court subsequently and procedurally did not calculate the guidelines properly. So your argument is there's insufficient evidence to support the loss finding. Your Honor, the answer is yes, and I repeat the only rational evidence that one can use are the amounts of money that have a person's name next to them. They are designated as wire transfers. Every one of the victims, your Honor, in the chart you will see, has a Y next to it, has a wire transfer next to it. Those were all identified as victims. That amounts to less than ---- Yes, and as a matter of fact ---- Which is the laundering aspect. In 2013, it shows about $119,000 went from Mr. Ogundile's account into Mr. Oleone's account, and that's it. The rest of it, Judge Anemar, I respectfully submit the court simply didn't have any analysis of any type to make a finding of a 16-level injury. Thank you. And your issue on loss, does it cover other defendants too? Your Honor, I'm sure it does because I believe that Judge Grimm did the same thing with other defendants. He looked at these charts, evidence, and he used that as a basis for his findings. And you all break this very thoroughly. And I thank you all very much. For sure. Thank you. And Mr. Windham? Windham? Thank you, Your Honor. I also went up in the United States. Let me take up a little preliminary matter. It's sort of minor. I guess you're going to ask us to follow the law the way the law is written in this case. And there is a law, Rule 32A, that says a brief may be reproduced by any process that yields a clear black image unlike paper. Paper must be opaque, unglazed. Only one side of the paper may be used. And the brief I got had both sides used. I'm unaware of that, Your Honor. The one that I have, which I believe is the replica of what was sent to court, is single-sided. If an error was made... Maybe I've got the wrong... I've probably got the wrong brief, then. Here's the... I'm the same as you are. If an error was made, Your Honor, we can... No, it's all right. It's not all right because it didn't follow the rule, and it makes it hard to read, and the rule was put in there for a purpose. But I say that only as a slight matter. You all decided you didn't want to waste paper, maybe. Given the number of binders... I'd say you probably used a lot of paper in this case. Yes, sir. All right. You can go on with your stuff. Sixteen days of trial. No, no, no, Your Honor, and I apologize for that error. There were 20-plus issues briefed. Approximately five have been raised, orally carried arguments. But they haven't waived any of them. Sir? They have not waived any of them. No, sir. We're giving them credit for all of them. Yes, sir, absolutely. I had intended to address the ones raised at oral argument, and to the extent that the Court has questions on the ones that are briefed, I'm happy to answer those. But you may want to jump on some others. You might be more concerned about others than they are. That may be true, Your Honor. They're a different order than they put them. You may not be concerned about any of them. That may also be true, Your Honor. I'll start with the charts, which were raised first by Mr. Isley. As Your Honor has noted, this is an abuse of discretion standard. This is an evidentiary matter ruled upon by Judge Brown. The charts can be found at Joint Appendix 4202 through 4212. There is no dispute that the underlying data in those charts is in this. Every line, every number, every name was accurate from a bank statement or from an email search form. So there's no dispute that the information was factually correct. The only issue raised in the field is that somehow these were expert opinions. These are charts masquerading as expert opinions. So here's what the charts actually were. The charts were created with specific criteria that was then told to the jury. So the jury was told exactly what criteria was used for every single one of the charts, all cash deposits. The twist is the charts were not pure mechanical reproductions of the documents. There were some judgment calls made as to what to be included and what was not included. And those judgment calls were based on opinions about who was implicated and who was not. And that's their argument. And I suppose if they did a similar chart, it would look quite different from your chart on it. And I think to be compliant with the spirit of Rule 1006, the idea is just mechanically to make it easier for the jury to see voluminous documents. And their criticism is it wasn't just for that purpose. It was also for the purpose of advancing your theory of the case. And I think that's the thrust of their argument. Sure. And if it didn't advance their theory of the case, then it probably wouldn't come into evidence, even under basic relevant rules. No, I'm talking about the selection of entries that's put on advance. In other words, you made judgment calls about what deposits to include on the charts and what not. That's true. And those judgment calls were explained to the jury. But what Agent Rutledge did not do is he did not say, and this cash deposit was from a fraud victim. And all cash deposits over $1,000, those are clearly fraud monies. That was not an opinion stated by Agent Rutledge or forensic analyst Rutledge, excuse me. What Mr. Rutledge did was he showed the chart, and he explained the criteria. But the chart is not testifying. That's different evidence, and that's the problem you've got here. The chart is being used in a way to present a summary of evidence in a manner that almost presents some form of choice. What is important and what's not. It also has victim lists on it. And to the extent that they are used to comb through these 10,000 pages of financial transactions, some of that may or may not have been admissible. You can't use a chart to get in evidence that's otherwise inadmissible. But I think that you can go there on this if you think it's harmless to some degree. And it may well be that in approaching this issue, you're going to go back and forth on this quite a bit. Now, I'm going to tell you that right now. We're going to be going back on this chart thing. But if you focus on that harmless error, at least from my perspective, you might make some good inroads. Let me turn to that issue. I'll address one thing then first. The underlying documents all were admissible. I don't think that that was an issue as to whether or not. Were they admissible or admitted? Many of them were admitted as independent documents. Not all of them were admitted. That's correct. But they were all admissible. They were all admissible. Many of them were admitted through bank custodians. Admissible in your perspective, but not admitted, and then put on a summary chart, put forth a jury. That's not the way you get them in. You don't skirt the rules of evidence and how to get evidence in by saying put it on a chart and say these are admissible. And then they just come in without anybody having a chance to judge them. That's why I say if we stick on this thing, we're going to be talking about it quite a bit, because that victims list that goes in it comes through 10,000 pages of financial transactions that are used to highlight this fraudulent conduct. And there's some question as to didn't we determine all of them admissible, not admissible? That's why I say if you want to focus this thing on another area here, which it sounds to me like that might be a good way to do it. But we'll be back and forth on this quite a bit. With respect to the harmlessness, Your Honor, each defendant will have different evidence arrayed against them in the trial court. Mr. Gundley was the main proponent of this argument below and on appeal, and I'll start with him. Mr. Gundley had what can only be quantified as massive funds coming into his bank accounts with names that he didn't know, names of folks he did not know on the face of the bank statements. None of that money did he report on his tax returns, on financial documents, which evinces his knowledge that this was fraud, that this was money that he should not be getting. Were there any tax charges? No, sir, there were no tax charges. But you sort of tried them for tax evasion, just like you just said. None of them was reported right. No, sir, we did not charge for that. Was that 404B stuff? Judge Grimm found both that it was intrinsic and that it was non-intrinsic, that it was 404B. It was intrinsic, inextricably intertwined. That is the first round. As an alternative round, Judge Grimm found it was clearly 404B evidence showing knowledge, showing intent. There's also evidence which is- Let me back up. You said all the evidence that's reflected on these charges was admissible. Not all of it was admitted. Is the admissible part your opinion, or did the judge say it's all admissible, that it refers to? I strongly believe the judge said that. I can find it in the Joint Appendix site. Mr. Isaac said that as well below. The more critical question in that regard is, did you provide all that evidence to the other side to let them review it? Sure, we did. Because the whole operation of the rule is to give them the box of data, and the proffer is basically that it's admissible and you're going to put it on the chart. Correct, yes. If they found it inadmissible, the papers, that is, they would have to object to that at that point. That's right, Your Honor. All of the documents were provided to the defense. That is nondispute. They were provided well in advance of trial. Was there any objection made to the admissibility of any of the documents in the box? No, they were all certified records. Certified business records, Your Honor. In addition, the charts themselves were provided approximately two weeks before trial, and then were not put into evidence until at least the second week of trial, I believe. Also, going back to harmlessness, with respect to Mr. Nathalae, he made exceptionally incriminating statements to the case agent, including telling his indicted conspirator, Mosul Mukhtar Farina, that he didn't feel comfortable, that he didn't want to see these names on his bank statements anymore, which is why, after that statement was made, a lot of the deposits were in cash. Also, for Mr. Nathalae, there was the prayer list found in the family Bible, in which he sought from the Lord in 2015 to free him from court cases, the police, and the FBI. With respect to Mr. Nathalae's wife. That's inculpating? Sir? Is that inculpating? The prayer? The exact prayer that was found was inculpating what's admitted under, as reported under 401, was a statement of reported violence. Certainly when agents execute a search warrant and find a note that is exceptionally specific and says, free me from court cases, please, and the FBI, who has brought this massive romance wire fraud conspiracy. It was very criminal. In terms of harmlessness, and I'll spend a little time on this, simply because the harmlessness arguments flow through all of the evidentiary issues that were raised by the defense. Which it all comes down to is, if you make an argument that we didn't need it, even if it was properly admitted, and we didn't need it, and it wasn't necessarily for trial, for instance, the victim's list here, that you could say summary of evidence necessarily involves a hearsay opinion in order to be able to put that evidence together. And your answer could be simply, well, we didn't need the hearsay victim's list because we had other evidence here to prove this up, and the actual list and other witnesses were actually presented. That's true. And if it came to that, we would have introduced every single one of the bank statements themselves, which alone, I think, would disprove any harm, since the charts themselves were summaries of the line items on the bank statement. Each of the other defendants also had a large amount of evidence raised against them. You weren't going to introduce those bank statements. You were not going to introduce those bank statements because you'd have to go through 10,000 transactions. So that's not practical. That's not what I'm getting at in terms of the need for saying something's harmless. It's evidence that's sufficient beyond this evidence that's presented in the form of a chart. In other words, you didn't need that chart. You didn't put that summary chart. The evidence was there. The summary chart was not the main evidence in the case, or it wasn't the evidence necessary to prove this case. The chart was not. The clauses were a large part of it. I've already spoken to all the other evidence with Mr. Gundula. With Ms. Bakula, there also was a large amount of information, including that she was part of a car company named Benson Auto Place, registered in Nigeria. This was found in the search of her residence. The basic scheme here was a trade-based money laundering scheme involving the export of used cars. She was able to direct and control some of the flow of money into her accounts, as proven by trial evidence in which she sent emails to her husband. There's a text message from Mr. Gundula as well, in December of 2013, a solid year after Mr. Gundula has been tinkering with the wording of a 419 broad letter on emails, back and forth with Mukhtar Marina, in which Mr. Gundula texts his wife to please call mummy again today regarding the money he sent. This is all fraud money. It's much too popular when I return to the United States. There's also, just as a general matter, deposits coming into and out of Ms. Bakula's account, including on the face of the bank statements themselves, not charts, but the bank statements, showing transfers from places like Florida, Georgia, and Oregon. Places that have no business in those bank statements, unless it was fraud money. As well, the defense spent the money. In fact, she did not report the money on any of many financial forms, tax returns, bankruptcy filings, food stamps, filing with the state, and then she spent it personally. It would be some of the funds, including by buying a time shed, that sort of thing. With respect to Babatunde Bakula, much of the evidence for him is similar in type to the evidence for Mr. Gundula. Babatunde Bakula did not report the very large sums of money coming to his account as tax returns, which is knowledge. He testified at trial. The jury found him not credible. He was severely impeached with many statements made under penalty of perjury in other settings that he disagreed with when he was on the stand. There were also bank videos showing him at ATMs making withdrawals within minutes or hours of victims having placed money into accounts that he controlled, but that were not in his name, including the account of Kofinspirit or convicted Kofinspirit Adyinka Awolaja. There was also the wires with victim names coming into these accounts. With respect to Mr. Obeye, he also testified at trial. He was severely impeached, both on cross-examination and through the government's trial case. He also did not report many of the funds on his tax returns. He gave post-arrest statements to the agents in which he said that he was suspicious of the money, that he confronted a Kofinspirit back in 2012, and then for years he kept doing it anyway. At least three bank accounts of his were closed, including where one bank said that the money was quote, bad money, and yet he kept doing it year after year, deposit after deposit. And he admitted to Agent Custer as well that he knew that the money, quote, wasn't right. So for all of those reasons, the charge or any of the evidence or matters here are harmless. With respect to the next, and let's go to the next question from this. With respect to the next issue, the statements that were made by Mr. Dundelet and Mr. Pukula, that the defendants tried to get him at trial, and the standard here is abuse of discretion. There was a very, very thorough argument on several briefs in several parts of the trial in which the defendants will have attempted to bring in this information, and Judge Graham correctly found that the cases foreclosed this argument. I'll start with Mr. Dundelet. Mr. Dundelet appears to want to bring in his entire hour-long statement to the agents when he was arrested, and that is foreclosed directly by the Williamson case out of the Supreme Court, which was cited in our figures. Magician with Pukula wanted to obtain out of Mr. Dundelet's post-arrest statement three sentences that, essentially, that she wasn't involved in the business at all, that she doesn't know anything about the business, and that her account was used when Mr. Dundelet's account was closed. For that, I believe that both the Wilkerson case from 1996, which talks about oral statements, forecloses the court's ability to have let that in, and then Judge King, you were on the Hassan case back from 2014, and that also forecloses the relief that the defendants request. They say there's a distinction between common law rule and the evidence rule. Yeah, yes, sir. First of all, Wilkerson, the earlier case from 20 years, approximately 20 years before Hassan, covers oral statements. That was before the rules of evidence? In 1996. Rules of evidence came in in 75. They've been around a long time. Yes. In addition, I don't know how any common law doctrine of the rule of completeness could control when Rule 802 itself, which talks about what hearsay is admissible, says that only hearsay is admissible if it is permitted by statute, these rules, or another rule of the Supreme Court. And the common law, if there were to be one, the common law rule of completeness would not survive under 802. In addition, as Mr. Isley admitted, no court has held that the common law rule of completeness has survived the complications of the rules. Could you address the 1028A argument? Mr. Wannigate brought up the sufficiency of the evidence as to the 1028A. Yes. I think he's focusing more on whether you should have charged under the fraud aspect rather than the theft. And he's saying that there wouldn't be a theft because there was consent. Yes. So, the title of the statute is aggravated as theft. The elements include the transfer, possession, or use of a means of identification without lawful authority, knowing that it is the means of identification of another person out there in your net in connection with one of the predicate crimes. So, in this case – and I'll address directly Mr. Wannigate's arguments, and then I'll expand on that as to why there are other bases that this counts as theft. So, the argument regarding Babatunde Kapula is that the sister, Babatunde Kapula's sister, that's the individualist in the indictment, gave consent for him to use her bank account. The individualist testified at trial in the defense case and said basically that. She said, I gave him consent, and then she also testified as a character witness, saying essentially his red guy had no reason to question her. So, if she gave consent, then it would have been only consent for a lawful purpose. As Judge Winn said, you cannot give consent – and that's a two-year – U.S. First, a two-year set up, of course. One cannot give consent for unlawful conduct or to use their means of identification in unlawful conduct. So, either individualist, he gave consent, that terminated at the time that Babatunde Kapula used, transferred, possessed her name and bank account information at the time that he chose to use it on the lawful, or she gave permission to – individualist A gave permission to use her means of identification for any reason whatsoever, in which case she falls squarely within a tuya as a co-conspirator's means of identification. The initial – there was no – in terms of what individualist A did, individualist A did permit, at least as it shows, individualist A did permit Babatunde to use her account. However, the charge itself was transfer, possession, or use. In this case, Mr. Kapula transferred the name and the bank account number to co-conspirator Victor Olleada, who then used this account in order to deposit victim life. This case is very distinct from the Spears case of the Seventh Circuit that Mr. Wannegie relies on. That case was – I believe it was a firearms permit. It was a means of identification of some sort in which the defendant used the name and identifying information of a particular person, made a fake ID, and then gave that document back to the same person whose name appears on that fake ID. And the question before the Seventh Circuit really was, what is the definition of another person? And the Seventh Circuit basically found that there was no transfer, possession, or use of means of identification of another person since the fake ID was given to the other person. Here, the means of identification of individualist C was transferred to Victor Olleada and was used extensively by Mr. Kapula and then, to a lesser extent, by Mr. Olleada. Could you also address the loss amount? Yes. For Mr. Olleada, first of all, this is a clear error standard of review. What the court found, consistent with what the government advocated for, was a very conservative measure of loss. What the government advocated for was that the court used the dollar amounts that were on the charts with respect to Mr. Olleada only. So just the money that was going through Mr. Olleada's bank account, not the conspiracy liability loss for which he also could have been held accountable. All of the funds, as the lower court found, for the same individual fraud that was introduced at trial through the government with 200 emails and with 12 victims getting out there and saying, here's how I did it. It was cash or it was a wire transfer or a check and they were roughly these dollar amounts and they were large, round numbers. And so given all of that indicia of fraud, the government argued to the jury and then to Judge Grimm that all of these items were fraud money coming in. Judge Grimm relied on that evidence. He sat through four weeks of trial. And he, as I said, took a conservative approach that the government advocated by not including the many, many other millions of dollars that flew through the co-conspirators' accounts. Now, as Judge Wynn pointed out earlier... What was the government's position on the law? The court accepted the government's position. Pardon? The court accepted the government's position. Okay, so you took a conservative position. Yes, sir. I think my statement below was that it was conservative and therefore it was... What was the number? $1.6 million? That sounds right. It was between the $1 and $2.5 million. I believe that's right, $1.6. All right, I don't disagree with my friend as to what the dollar amount was. But with respect to that amount, the government's argument below that the court accepted was it is a conservative amount and therefore it is by definition a reasonable estimate. It could not be other ones. And that is all the trial court was required to find. And that number, just to put it sort of coarsely, was the aggregate of the amounts that went through his account. The amounts that bore the indicia of fraud that went through his account. Because the charts did not include... And it did not include the amounts that went through other persons' accounts. Correct. And it didn't include every dollar that went through his account. It just was the criteria that was discussed. So I think going to Judge Wynn's point about the assumed error of harmlessness inquiry, I don't think I've ever seen a more concrete example of where a judge in Southern Division of the District of Maryland has made it unequivocally clear that the same sentence would have been rendered regardless. That sentence also is reasonable for the reasons described by Judge Grimm's record. And they went through each of the 35-53-8 factors. Now, the last issue that was raised here was the iPhone for Magisla Papoula. The question that Special Agent Winkes asked Magisla Papoula, the exact question was, could you please unlock your iPhone? Could you please unlock your iPhone? And that is not approved. Agent Winkes handed the iPhone to Magisla Papoula. Magisla Papoula entered a passcode that Agent Winkes did not see, handed the phone back. When Ms. Papoula handed the phone back to Agent Winkes, the phone was unlocked. Agent Winkes handed it to somebody else, and basically never saw it again. Forensic examiner took it from there. The entering of the passcode was not testimonial, as an initial method, and that there was no assertion of fact. There was no assertion of a belief. It communicated nothing to anybody because Agent Winkes never saw it. She was never told what the passcode is. It is, as we discussed and as Judge Grimm discussed below, similar to opening a door or opening a safe. The entry of the passcode showed ownership, did it not? It showed the ability to access the device, which was never a question. Typically one who has a passcode to the phone, you can typically ascribe there's some measure of ownership or somebody who has that. I'm just thinking of folks in my family, Your Honor. Yes, it's certainly evidence of ownership. It certainly shows the ability to access the device. But opening a door doesn't mean that the person outside the door has the right to search the house or the office inside the door. Here, you say this is just like opening a door, but they put in the passcode and gave you the phone. They got everything in there. Well, let's examine the fact center. Your analogy stops there. In this case, there was a valid uncontested search warrant for the premises and all electronic devices and phones. There already was a warrant. The search warrant covered this phone? Yes, sir. All electronic devices. You could have gotten in it anyway. Sir? You could have gotten in it anyway. To the extent we could have gotten into it. There's no record developed on that floor. But that goes to the next part, then. If the non-testimonial evidence, which would be that context, the proof of this, is something you're going to get to anyway, then you don't have to worry about the aspect of whether this is testimonial. It does appear on the space to be likely incriminating for someone to use a pass to, say, open up a passcode. That tells you, I can't open your phone. Others can't. I'm only using those examples. Sure. In terms of ownership. The point being is it does seem to be likely incriminating. And that would invoke the Fifth Amendment. Your point to Judge King's question is, well, you know, this is, when we go beyond that passcode, that passcode was never introduced in the evidence. We're not trying to get that in to show the ownership. It wasn't used for that purpose. Well, in there, there's a whole different ballgame. And there are cases on point that support you on that. And it seems like to me that's an easier way to do it. And that's where the courts have gone when they've looked at this question. And it's been primarily exclusively district courts that have looked at this issue with respect to phones or computers. And they basically skipped the testimonial aspect of it. They skipped it, but they certainly didn't go where you went. And that is to say, this is not testimonial evidence. Because you've got this code here, and it shows ownership. It looks like it's incriminating. But court, you know, even if you wanted to have a debate on it, why have it? Because you've already got the cases going your way on this. Why waste time on that? And you're right, Your Honor. It is, you know, the Petain case, and then before that, the Sterling case, and now the case out of the Fourth Circuit, which had the same holding of Petain before Petain even existed. And so for those reasons, all of the evidence from our phone number. I'm happy to answer any other questions in my final minutes. Okay. Thank you. Thank you, Your Honor. All right. Mr. Eisley. Your Honors, I'd like to try to focus on the things that the court has talked about and address some of the statements of Mr. Windham, specifically as one of the arguments about the rule of completeness as non-survival. Well, again, Judge Grimm laid out a very specific tract. As Your Honors have said, he's somewhat of an expert on the rules of evidence. When you're in court with him, he can rattle off every rule of evidence, word by word, in most of the cases related to it. And in that, he finds that, and I quote from him, he says, Although there are certain rules, the court does not have its hand tied when looking to make a fair presentation of evidence. One of the basis for that is Rule 403. It says that if it would lead to unfairness, the judge can actually, for example, not allow the prosecutor to keep their part in and the defense part out. I think it's Rule 102 talks about the whole point. One of the things is a fair administration of the case. The rule of completeness was based on the idea of a fair presentation to the jury. Let the jury decide what the statement means. Let them hear the whole thing or most of it so that the statement is taken into context, which is the fair thing to do. And it appears from Judge Grimm's opinion, as he mentions, this is something that comes up time and time again. He addressed this after our case. And even in our case, before he ruled against us, based on what he thought to be control and precedent, as the government has decided, he said this doesn't seem to be fair. That's what he said. But he believed that the rules of the case is restricted from coming to basically a fairness conclusion. And he changed his mind in the Bailey case. So we believe that there is a basis to not even overrule your own decisions in that case. I hear you. And I also understand Judge Grimm's comprehensive knowledge in this area. But there's this lingering notion that whole rules of evidence were intended to supplant the common law rules and get a uniform set of rules in the courts that were not relied on by state common law rules or a federal common law rule, with the exception of places where the rules of evidence explicitly incorporated common law-likened privileges. And the indication of that is in the hearsay rule. But I can't vouch for that. But what you're saying runs counter to my intuition that we don't use the common law rules of evidence. We use the codified rules of evidence, especially when they address the very subject. Yeah, I think, Your Honor, it's going to make for some interesting diagrams. If you had to write on that, it would probably get a professor in or something to help us write it. In my opinion, and this is just from reading the opinions, I think it comes with, again, dealing with the fundamental fairness of the trial and letting the jury decide and letting them hear the complete – that was the whole basis of the rule. And from what I can see from this rationale – But when you're talking about that, you get back to the discretion of the trial court. Yes, which – And in the event, which this is an abuse of discretion, review on these evidence questions. But our argument – and I think it kind of affects each person differently. So, for example, Mr. Saleman would like to have had my client's portion where he said that his wife was not involved in, but she couldn't call my client because my client had his constitutional right. So she was specifically hindered from having all the ex-auditory evidence after her brought into court based on the government's reading of the hearsay rule. And, again, reading the Bailey case, I think if the judge had decided – it would have been a different ruling in our case, but chronologically, we did not have such luck. So I think all the issues have been fairly addressed. Your Honors, if there's nothing else, I'll – Thank you. And we'll take a very short recess and come down and greet counsel. It's our report. We'll take a brief recess.
judges: Paul V. Niemeyer, Robert B. King, James A. Wynn Jr.